By the Court.
Bosworth, J.
John S. Austin, one of *12 plaintiff’s witnesses was present when the horse was injured. He testifies that the horse was injured on his head and on his side. He was asked, “were the wounds you saw sufficient, in your opinion, to produce death?” The counsel for the defendants objected to the question: what ground of objection was specified the case does not disclose. But it does state, that it was not objected to on the ground that it was leading.
The court allowed the witness to answer the question, and to that decision the defendants’ counsel excepted. The decision is claimed to be erroneous on two grounds:
First. That the witness did not show himself possessed of any such peculiar skill, or knowledge of the physical structure of a horse, and of the natural and ordinary effect of wounds, as entitled him to speak as an expert. ■
Second. That, as matter of fact, he did not examine the wounds of the horse with such care as to describe them, or to judge correctly of their effect.
The accuracy of the decision depends upon the foundation laid by the previous testimony, for the admissibility of the opinion of this witness as to the point of the proposed inquiry.
He had testified before the question was put, that he had been acquainted with horses twenty-five years; had owned horses for twenty years, from one to sixty all the time; had doctored all his own horses for fifteen years, and the same for other people; had never studied the diseases of horses; his knowledge came from experience <-> he doctored a horse pretty much as he did himself, and he had prescribed for other horses.
He did not pretend to any acquaintance with wounded horses, nor to any capacity to judge of the effect of any particular wound not possessed by any man of ordinary experience and intelligence.
Is the opinion of such a witness that a wound which he saw (and which he does not pretend to any inability to so describe, that a jury may not know everything as to its nature or extent that he did) was sufficient to produce death, admissible as evidence to prove that fact?
Whether a man has owned only one horse or a span continuously, or has owned from one to sixty, if he has never studied the diseases of horses, and more especially if he is unskilled as *13 to the effect of wounds, and has never treated such injuries, it is difficult to say on what principle his mere opinion upon the question, whether a particular wound was sufficient to produce death, is admissible as evidence. In such a case the opinion is not based upon skill or science, which the jury cannot be supposed to possess to the same extent as the witness.
The grounds upon which opinions, involving scientific knowledge, are received, rest upon a natural foundation. “ The very notion of science springs from the recognition of the existence of general truths or laws, to which the relation of things and their operation upon each other conform. These laws or truths ascertained by the investigation of men devoted to particular departments of inquiry, constitute science.” “In every case the scientific witness brings the result of the previous investigation of general truths or laws to aid the particular inquiry. In case of death, the physician, from an examination of the body or from the appearance of its parts as proved by witnesses, speaks as to the cause of death, as that it was produced by poison or by disease. In such a case the substance of his testimony is that those appearances, seen by himself in the body or proved to exist there, either generally or universally, have been observed to accompany death produced by such poison or disease. It is the general or universal fact which science supplies to him, and which through him is made available to the jury.”
“In all these cases of inquiry as to scientific opinion, without exception I believe, the witness need know nothing of his own knowledge, as to the facts of the particular case. His opinion may be given as to hypothetical cases, or upon any view of the facts in evidence as established or supposed to be established by other witnesses, though, of course, so given, its weight may be much less than where he can speak both to the particular facts and to the proper scientific interpretation of them.” Clark v. Baird (5 Seld., 194, 195).
The views expressed in these extracts from an opinion approved by the Court of Appeals, indicate that if the testimony excepted to was admissible as that of a scientific expert, it would have been equally competent, after proving by another witness the existence of such wounds as he described, to have asked Austin’s opinion whether they were sufficient to produce death.
*14 If admissible in the latter aspect, it would be nakedly for the reason that Austin had continuously owned more horses than it can be presumed that persons generally do, or had doctored the diseases of horses more than they, and not from any capacity not possessed by them to foretell that the existence of a particular wound, as a uniform result of the law of cause and effect, would produce death. If the wounds or either of them was such, that on a statement of all the witness saw of them, any person, of ordinary capacity and experience, would naturally or might properly conclude, that they would produce death, the case is not one which renders competent the mere opinion of a witness, possessing no knowledge on that particular subject which jurors generally are not presumed to possess.
Whether they were of that character or not, is not to be determined in whole or in part by the mere opinions of persons, who have no special skill or knowledge of the effect of a particular wound upon a horse, and who have no better means of determining the fact than the jurors themselves, except that the witnesses saw the injuries inflicted.
The theory of the rule is, that on the description of the injuries by those who saw them, the scientific expert is competent to determine more accurately their natural and necessary effect, than the witnesses who saw them inflicted, when such witnesses are not themselves experts; or the jurors by whom the facts at issue, are to be decided.
It cannot be answered to the objection and exception that the ground was not taken, that enough had not been proved to make the opinion admissible as that of an expert, and if such ground had been taken it might have been obviated for aught that appears and therefore the exception' is untenable.
To make mere opinion competent evidence, a foundation must be laid for its admissibility. The general rule is, that opinions and deductions from facts are matters which belong to the jury. When the opinions and inferences of a witness are inquired into as matters proper for the consideration of a jury, their province is in a measure usurped, and the judgment of witnesses is substituted for that of the jury. All the cases in which opinions may be proved are exceptions to the general rule, and stand upon the general ground of peculiar skill and *15 judgment in the matters about which opinions are sought. To uphold an exception to a decision admitting a mere opinion as evidence, the facts making it competent should have been previously proved.
But the witness had stated, before the question was put, that he had never studied the diseases of horses, and he did not pretend to any knowledge of the proper treatment, or the natural effects of bruises, fractures, or flesh wounds. His cross-examination did not obviate this objection to the competency of the witness’ opinion. He testified that he was “not a horse doctor.” He had seen the skeleton of a horse, but never its sinews and nerves; he was once called up to doctor a mare that had run away and had run a shaft into her Shoulder. He also testified; “ seeing a horse lying on his side and a piece of timber run into the side three or four inches; I should call the wound fatal.”
It is quite evident that his opinion, whether accurate or erroneous, was not based upon any peculiar skill or knowledge of the natural and necessary effect-of such a wound as he described, not possessed by persons of ordinary experience and capacity. We think the exception well taken. The various exceptions to the rule that-opinions are not competent evidence to be submitted to a jury; and the grounds on which they rest are stated and illustrated in the opinion of the Court, in Clark v. Baird (5 Seld., 183). Various applications of 'the rule and of the exceptions to it, are discussed in Merritt v. Seaman (2 Seld., 168); Dewitt v. Barley & Schoonmaker (5 Seld., 371); The People v. Lake (2 Kern., 358).
As to the decisions rejecting evidence that the horse “appeared ill,” and that “its general appearance denoted ill health,” it is proper to observe that the plaintiff had previously examined several witnesses on his part as to that point, by questions inquiring as to the “apparent health” of the horse, among the interrogatories annexed to commissions produced on the trial. The answers of his witnesses to those questions having been read by the plaintiff, it is by no means clear that the defendants had not a right to oppose to it evidence of the same nature from witnesses on their part.
Neither party had a legal right to give evidence of that character, unless it follows that the plaintiff, by reason of having given such *16 evidence on examining the witnesses on his part, had precluded himself from objecting to evidence of the same kind in reply to it.
Whether he had not thus precluded himself from raising such an objection, it is unnecessary to decide definitely, as a new trial must be granted for reasons already stated.
It may, however, be added that the evidence, when read by the plaintiff, was not objected to by the defendants; and the evidence offered by the defendants does not appear to have been offered for the purpose of contradicting the plaintiff’s witnesses; nor was the attention of the Court called to the fact that in the voluminous depositions read by the plaintiff, any such testimony was contained; the defendants’ offer and its rejection appear to have proceeded upon the general question; whether such evidence w.as, in its nature, competent, and we have no hesitation in saying it was not.
The evidence offered as to the value of the horse in California was excluded by the Court, on objection taken to it by the defendants. The witnesses, so far as the admission or rejection of their evidence was controlled by any decision of the Court, were required to state his value on the Isthmus. But the charge of the Court imports, if it does not directly declare, that such value was not to be determined upon the hypothesis that its owner must of necessity sell or retain him on the Isthmus, but upon the consideration that he might do with him whatever suited his interest or pleasure, and with reference to all the uses to which, according to facts proved at the trial, the owner or purchaser might devote him. The. Court was requested to charge otherwise and declined to do so; and to such refusal the defendants’ counsel excepted.
Of the plaintiff’s witnesses, Johnston, Hendrickson, Porter and Somerndyke, knew nothing of the market value of such a horse at Panama, nor of his actual value on the Isthmus," disconnected from the idea of the price which they supposed he would command with a view to be taken to and used or sold at some place off the Isthmus.
Johnston was allowed to state his value when put on the “cars at Aspinwall.” So, also, were Hendrickson, Porter and Somerndyke.
. The opinion of witnesses as to the value of an article in ques *17 tion, is admitted partly on the ground that they have and are shown to have a knowledge on that subject not possessed by persons generally, and partly on the ground that no amount of descriptive testimony as to some articles, as, for instance, a horse, would be as safe a guide to a j ury in estimating its value as the testimony of such a witness acquainted with the animal and speaking his judgment as to the value. (5 Seld., 193, 196.)
But to make the opinion of a witness on such a point equal to knowledge, or as near an approximation to it as is attainable, and partake of the character of a fact, he must be peculiarly qualified to speak on the subject, and possess a knowledge not possessed by the mass of those having ordinary experience and intelligence.
When, as in a case like the present, an article like that in question, has not been a subject of traffic or sale at or near the place of its injury or destruction, and its value there is to be ascertained, not by reference to the price at which a similar article was ever sold there or in that vicinity, if witnesses are asked to express opinions of value, founded on facts as to its value at some place to which it could be carried, it would seem that such opinions should be excluded, and all the facts be proved which may properly be taken into consideration, and that the jury should determine the value upon such consideration of those facts, as in their judgment they deserve.
When it appeared that no such horse had ever been sold on the Isthmus, that he had, therefore, no market value there, in the ordinary sense of that phrase, we are inclined to think, evidence should have been admitted as to his actual or market value, at the nearest points at which he would have a market value, and the jury should be left to determine, in view of such facts, and the cost and hazards of transportation, his just value at the place where he was destroyed, that place being one to which a party chargeable with his value had taken and was bound to take him.
The defendants’ route being part of a connected line to California, and the horse being destined for the latter place, we think his market value in California, if proved that he had one at that place, might be shown, and that such a fact was a proper one to be considered by the jury in determining his value at the place where he died, or was killed.
*18 There was, therefore, not only no error in refusing to charge on this point, as requested, but the judge might, and, as we think, ought to have admitted evidence, that such a horse had a market value, at San Francisco, and what it was.
As the defendants could not have a new trial by reason of any error alleged to have been committed on this branch of the case, and as a new trial is granted on other grounds, the decision of some of the questions we have discussed in relation to the rule of damages, and the evidence competent to show what they were, do not necessarily arise, and .we do not intend to express an opinion to control the future action of the court, but merely to state our present impressions, to the end that such further investigation may be made, as may be necessary to remove any doubts that may exist, or be supposed to exist, as to the true rule, in respect to these points.
The admission, as evidence, of the book called, Youatt on the Horse, and of the parts of it containing a description of the glanders, seems to be opposed to the decisions to which we were referred, and to such as have fallen under our observation. 5 C. and P., 73; 6 id., 586; 7 id., 701; 1 Whart., 469 ; 7 Pet. Rep., 554; Commonwealth v. Wilson, 1 Gray (Mass.), 337; Melvin v. Easby, 1 Jones (Law), N. C., 386; Laning v. The State, 1 Chand. (Uis.), 264; Corks v. Purday, 264; 2 Car. and Kir., 270.
The matters alleged in such a book as facts, when relevant to an issue to be tried, must be proved in the same manner as any other facts. The book itself is no evidence of their truth. This proposition is established and illustrated by the cases cited, above.
The judgment must be reversed and a new trial granted, with costs to abide the event.